ANGELINA COUNTY LUMBER CO. v.
HINES et al. (No. 53.)*

(Court of Civil Appeals of Texas. Beaumont.
Jan. 6, 1916. On Motion for Rehearing,
March 2, 1916.)

1. STIPULATIONS ⊗⇒14(4)—EVIDENCE—CHAR-
ACTER OF TITLE—LIMITATION.

Where the parties in an action of trespass
to try title agreed that the plaintiff owned a cer-
tain named league, unless it was divested by the
claimed limitation title of the defendants, who
by their pleas expressly claimed title by limita-
tion only to a part of another league, the plain-
tiff was entitled to judgment.

[Ed. Note.—For other cases, see Stipulations,
Cent. Dig. § 27; Dec. Dig. ⊗⇒14(4).]

2. JUDGMENT ⊗⇒256(1) — PLEADING ⊗⇒387
—CONFORMITY—NECESSITY.

A judgment must conform to the pleadings
and the proof, and the pleadings and the proof
must agree.

[Ed. Note.—For other cases, see Judgment,
Cent. Dig. §§ 446, 454; Dec. Dig. ⊗⇒256(1);
Pleading, Cent. Dig. §§ 1300–1304; Dec. Dig.
⊗⇒387.]

Appeal from District Court, Sabine Coun-
ty; A. E. Davis, Judge.

Action by the Angelina County Lumber
Company against L. R. Hines and others.
Judgment for defendants, and plaintiff ap-
peals. Reversed and rendered.

Mantooth & Collins, of Lufkin, and W. D.
Gordon, of Beaumont, for appellant. W. F.
Goodrich, of Hemphill, and Minor & Minor,
of Beaumont, for appellees.

MIDDLEBROOK, J. This is a suit in
trespass to try title, appealed from the dis-
trict court of Sabine county, in which appel-
lant was plaintiff, and L. R. Hines, George
Hunnecutt, and his wife, Lillie Hunnecutt, G.
E. Pratt, A. M. Jones, George Tucker, A. J.
Tucker, and his wife, Maggie Tucker, were
defendants; and by supplemental petition
Elizabeth A. Perry and W. D. Gordon were
vouched in as warrantors.

The land involved is about 67 acres of the
John S. Lacy league in Sabine county, Tex.
Defendants L. R. Hines and George Hunne-
cutt were disposed of by agreed judgments.
The following agreement constitutes the be-
ginning of the statement of facts:

"It is agreed between the counsel for all
parties that the plaintiff has title from the sov-
ereignty of the soil to the John S. Lacy survey,
described in plaintiff's petition, unless it is af-
fected by and divested through defendant's plea
of the statutes of limitation under the three,
five and ten years statutes.

"It is also agreed that as to the warrantor,
Gordon, the Angelina County Lumber Company
bought the land and paid the consideration as
alleged in the pleadings, at the rate of $7.50 per
acre on 27th of January, 1906."

Thus it will be seen that the only issues
before the trial court were the defendants'
pleas of three, five, and ten year statutes of
limitation.

The case was tried before the court with-
out the aid of a jury, and the honorable trial

court found in favor of the defendants on
their pleas of limitation and rendered judg-
ment in their favor for 67 acres of the land
sued for, 31 acres to Andrew J. Tucker and
his wife, and "about 36 acres" to A. M. Jones,
G. E. Pratt, and W. F. Goodrich; and in fa-
vor of plaintiff against W. D. Gordon upon
his warranty for the sum of $489.75, with 6
per cent. per annum interest thereon from the
1st day of April, 1911.

Numerous deeds were introduced in evi-
dence, all of which deeds in which the land
in question is involved describes the land as
a part of the Moses Hill headright survey;
but under the agreements of the parties, and
our view of the proper disposition of the
case, it is not necessary to quote these deeds
at length.

The evidence shows and the honorable trial
court found that the land in controversy is
on the John S. Lacy league in Sabine county,
Tex., to which the plaintiff has record title
from the sovereignty of the soil. The evi-
dence also shows that George Tucker bought
317 acres of land on the 31st day of May,
1881, from George W. King, being a part of
the Moses Hill headright survey; but that in
surveying the land 66¾ acres of the land in-
cluded in his 317 acres were taken out of the
John S. Lacy league, of which the plaintiff is
owner.

George Tucker testified as to the issues of
limitations as follows:

"I live on this 317 acres; I moved there in
1881, and have lived there all the time except
about a year. * * * I lived on it from 1881
to about three years ago. * * * I have gone
around this land. Of my own knowledge this
has been identified there on the ground since
1879, and I know where the lines were all the
time, and bought it and went on it in 1881,
moved on it and made my house on it, and
have continuously, from the time I went on the
land until 1912, lived on the land. * * * I
first cleared about 49 acres in 1882. * * *
Through all of this time I claimed this 317
acres of land to the metes and bounds as set
out in the deed, and as the line was marked on
the ground, as far back as 1878. I cultivated
and used the land for myself all the time, and
paid the taxes on the land every year on 317
acres, as described in the deed from George
King to myself, made in 1881. Nobody else was
in possession of the land before I went on it;
it was all in the woods. The survey of this 317
acres of land was made in 1879, and I paid
the taxes on it continuously from 1881 and
claimed this particular land during all that time.
* * * I claimed the land under my deeds.
* * * I rendered and paid taxes on this land
always as on the Moses Hill survey; we thought
it was on the Moses Hill survey. We knew the
lines as set down on the Moses Hill, and didn't
know that it went over on the John S. Lacy,
and I guess I never claimed any land on the
John S. Lacy league. I bought on the Moses
Hill and believed that was the line and if I got
over outside of the Moses Hill, I didn't know it.
It was a mistake on my part if I got over on
the Lacy survey, and every one of my tax re-
ceipts as far as I know read that way. (It is
admitted that all the tax receipts call for the
land on the Moses Hill.) I never rendered any
land on the Lacy league; I rendered 317 acres
on the Moses Hill. As to whether or not it is

a fact that it was only about seven years that I put that last few acres there across the line, that according to Mr. Arthur's testimony in the line between the Moses Hill and the John S. Lacy surveys; I will say that I think it was ten years ago. I think it was in January, 1905, that I cleared it. I think it can be identified that some of it was cleared across the line about twelve years ago, but I wouldn't swear it. As to whether or not I would swear that it was done as far back as 1905, I will say that I think it was, but at that time I didn't know that I had gone over on the Lacy league; I didn't know anything about it. But I did know that I claimed to the line, whether it was on the John S. Lacy or on the Moses Hill."

Andrew Tucker testified substantially as did his father, George Tucker, and in addition thereto as follows:

"I heard Mr. Arthur testify and know where that line runs as described by him as being the north line of the John S. Lacy league; I saw the stakes in the field where he made the line; it cuts off a corner of the southeast part of the field; I believe it is the S. E. There is some 8 or 10 acres in that portion. That is down on the creek; it might possibly lack a little of being that much, but there is between ten and six acres of it. I can't positively fix the date; but that part of the field has been there sixteen or eighteen years. There is a little corner that runs over on the land in question, that has possibly not been there over ten years. * * * Just a little corner, not over a quarter of an acre. We never claimed or paid taxes on any land except on the Moses Hill survey. We thought all of it was on the Moses Hill and never knew, till Mr. Arthur ran this line, that we were over the line. This other line was supposed to be the Moses Hill line. We didn't claim any land outside of the Moses Hill. We claimed to that line and thought it was on the Moses Hill and paid taxes on the Moses Hill, and if we got off the Moses Hill, it was a mistake on our part. When Mr. Arthur ran the line it cut off a kind of V-shaped piece of land south of Mr. Arthur's line. * * * I didn't see Mr. Arthur go over that land and measure it, and don't know that that part of the field don't exceed more than four acres; I didn't measure it. I mean that to the best of my knowledge, there is more than four acres. That is only guess work, but to the best of my knowledge there would be about six acres, and possibly more, * * * but I wouldn't say that it amounted to six acres in actual measurement."

All of the pleas of the defendants under the different statutes of limitation describe the lands they are claiming as on the Moses Hill survey.

Appellant's first assigned error is:

"Because the court erred in rendering judgment for each of the defendants Tucker, Jones, and Goodrich, for the specific interest by them; defendants having agreed that the legal title to this tract of land was in plaintiff, unless their respective pleas of limitation is sustained by proof sufficient to warrant a judgment on the statutes of limitation as pleaded by them. * * * *"

Defendant Andrew J. Tucker's pleas of limitations describing the land he claims under the three-year statute of limitation is as follows:

"Being 317 acres of land, a portion of the Moses Hill headright survey beginning at the northeast corner of George Hunnecutt's land. * * * *"

Then follows a metes and bounds description of the land he claims. Under his plea of the five-year statute of limitation, he describes the land he claims as the land, "last above described." "Last above described" refers to his description of the land in his three-year limitation plea.

In his plea under the ten-year statute of limitation he describes the land as "situated in Sabine county, Texas, a portion of the Moses Hill headright survey, described as follows." Then follows a metes and bounds description of the land that he claims under his ten-year plea of limitation. Goodrich, Jones, and Pratt give the same description in their different pleas of limitations as to original survey, and in each instance describe the land as on the Moses Hill survey.

[1] The undisputed evidence of the surveyor, Arthur, and the map made by him and introduced in evidence by the defendants, show the 67 acres of land in dispute to be on the John S. Lacy league. This being true, we think the agreement between counsel settles this case. The agreement is that appellant is the owner of the John S. Lacy league described in its petition, unless it is divested through appellees' pleas of limitation. Hence the defendants' pleas of limitation must be looked to in order to determine the status and legal effect of the agreement. These different pleas dispute a claim by defendants to any land on the John S. Lacy league, for in each instance they claim on the Moses Hill survey, and do not claim elsewhere than on the Moses Hill survey.

[2] Under these facts, the pleadings of the defendants and the agreement of counsel for all parties, quoted above, the appellees cannot recover any land on the John S. Lacy league. To do so is to violate the most elementary rules of practice. The pleadings and the proof must agree, and be in harmony with each other. If the pleadings and the proof must harmonize with each other, can it be said that a judgment can be legally entered and enforced that is contrary to the pleadings? We think not. Yet that is exactly what is done in this case, if the judgment is permitted to stand. The defendants' pleadings state, affirmatively, that the lands they claim by limitation are on Moses Hill survey. Defendants' counsel agree that plaintiff is the owner of the John S. Lacy league as described in its petition, unless it is divested of such ownership by their pleas of limitation and the proof under said pleas. Their pleas of limitations affirm that the lands they claim by such pleas are on the Moses Hill headright survey. Such being true, if they recover, they must recover on the Moses Hill survey. The defendants' witness, who surveyed and made a map of the land, says the land in question is on the John S. Lacy league, and the copy of the map he made, which is a part of the statement of facts of this case, shows, conclusively, that the land in question is on the John S. Lacy league. The judgment awards

lands on the John S. Lacy league contrary to the pleadings of the defendants, and therefore cannot be permitted to stand, and appellant's first assignment of error is sustained.

The second assignment of error is as follows:

"The court erred in rendering judgment for either of the said defendants upon the statute of limitation, as pleaded by them; their pleas of limitation nowhere claiming such possession as taken and held under some written memorandum of title other than a deed which fixed the boundaries of their respective claims duly registered as required by the statute."

Under this assignment, this proposition of law is asserted:

"An encroachment on the Lacy survey by mistake, with no intention to claim any of the Lacy, is fatal to the plea of title by limitation."

The deeds introduced in evidence by the defendants all describe their lands on the Moses Hill survey. Their pleadings fix their claims to lands on the Moses Hill survey, and they testify that they do not claim any land except on the Moses Hill survey, and that if they got over on the Lacy survey, it was a mistake on their part. Such being true, and it being true, also, that the judgment decrees land on the John S. Lacy league, such judgment is unwarranted both under the pleadings and the proof; therefore the second assignment of error is sustained.

Two propositions are presented under the second assignment of error; the second, presenting the law, applicable to a small encroachment, not being sufficient to apprise the owner of any adverse claims except as to the land actually inclosed. Under our disposition of the case, it is not necessary to discuss nor to pass upon this phase of the case.

The third assignment of error is submitted as a proposition, and is to the effect that the defendants Jones and Goodrich cannot recover upon their pleas of limitations because the land they claimed was segregated from the Tucker land, before Tucker had matured any title by prescription, and after it was so segregated, Goodrich and Jones had and proved no sort of possession, and therefore under no phase of the case could Jones and Goodrich recover under their pleas of limitation.

It is not necessary for us to pass upon this assignment under our disposition of the case. We think, under the pleadings, the agreement by counsel for all parties, and the proof of this case, judgment should have been rendered for the plaintiff; therefore the cause is reversed and rendered, and judgment is here entered for the plaintiff for the land sued for.

Reversed and rendered.

### On Motion for Rehearing.

Appellees have filed an exhaustive motion for rehearing in this case, which under careful consideration discloses no question for review other than this court considered and disposed of in the original opinion; and we still think that the agreement entered into, as quoted in the original opinion, the pleadings of appellees, and the undisputed evidence that the land in dispute is a different grant from the grant specifically pleaded by appellees, and the testimony of the appellees' witnesses precludes a recovery by them. Authorities: Davidson et al. v. Equitable Sureties Company, 96 S. W. 787; Titel v. Garland, 99 Tex. 201, 87 S. W. 1152; Holland et al. v. Nance, 102 Tex. 177, 114 S. W. 346.

The motion for rehearing is overruled.